LEAH S. DILBECK and BOYD W. DILBECK, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Dilbeck v. Commissioner
Docket No. 4943-75.
United States Tax Court
T.C. Memo 1976-307; 1976 Tax Ct. Memo LEXIS 97; 35 T.C.M. (CCH) 1380; T.C.M. (RIA) 760307; September 28, 1976, Filed Leah S. Dilbeck and Boyd W. Dilbeck, pro se. Milton J. Carter, Jr., for the respondent. FEATHERSTON
MEMORANDUM FINDINGS OF FACT AND OPINION FEATHERSTON, Judge: Respondent determined a deficiency of $1,568.21 in petitioners' Federal income tax for 1973. The issues presented for our decision are: 1. Whether petitioner Boyd W. Dilbeck was temporarily "away from home" in pursuit of his employment during a portion of 1973 and is, therefore, entitled to a deduction for expenses incurred *98 for meals and lodging. 2. Whether petitioner Leah S. Dilbeck has shown that respondent erred in disallowing a portion of the amount she claimed as a deduction for the use of her automobile in her trade or business as a real estate salesperson. FINDINGS OF FACT Petitioners Boyd W. Dilbeck and Leah S. Dilbeck, husband and wife, were legal residents of Phoenix, Arizona, at the time of filing their petition. Petitioners filed a joint Federal income tax return for 1973. 1. Meals and Lodging Issue
During 1973, petitioner Boyd W. Dilbeck (hereinafter Boyd) was employed as an asbestos mechanic and was a member of Asbestos Workers Local Union No. 73 (hereinafter the union), which maintained its headquarters in Phoenix, Arizona. In order to hire asbestos mechanics, potential employers contacted the business agent of the union, and the agent assigned union members to the various jobs for which he received requests for workers. During the initial 3 months of 1973, Boyd was employed by the Rymer Insulation Company in Phoenix, Arizona. Prior to April 2, 1973, when this job ended, Boyd contacted the union's business agent seeking further employment. Boyd was dispatched by *99 the business agent on April 2, 1973, to work for Owens-Corning Fiberglas Corporation (hereinafter Owens) in Page, Arizona. Owens was a subcontractor responsible for the installation of insulation in the Navajo Generating Station, a fossil fuel power generating facility located in Page. Boyd was not required by his union to accept employment at the Page jobsite. Construction work on the Navajo Generating Station commenced in December 1972 and continued until 1976. After commencing work at Page on April 2, 1973, Boyd did not contact the union business agent concerning re-employment in the Phoenix area because he understood from his colleagues that no work was available there. While working in Page for Owens, Boyd stayed at the Burtco Camp, a facility operated by Bechtel Power Corporation to provide meals and lodging for construction workers.For his meals and lodging, Boyd was charged $10 a day. During 1973 Boyd stayed in the Burtco Camp a total of 182 days and was charged $1,820 for his meals and lodging. Boyd worked for Owens at the Page jobsite continuously from April 2, 1973, until September 1974, when a work strike occurred. The work strike lasted approximately 6 weeks, *100 and at its conclusion Boyd returned to Page and continued to work there until approximately August 1975. Boyd's employment with Owens at the Page jobsite terminated due to Boyd's ill health rather than as a result of the completion of the work on the Navajo Generating Station. On their joint Federal income tax return for 1973, petitioners deducted $5,035 as expenses for meals and lodging incurred by Boyd during his employment at the Page jobsite. Respondent disallowed Boyd's claimed deduction for meals and lodging on the grounds that he was not "away from home" in pursuit of his trade or business within the meaning of section 162(a)(2). [1]/ In the alternative, should Boyd be considered as having been away from home, respondent contends his deductible expenses did not exceed $1,820. 2. Automobile Expense Issue
During 1973, petitioner Leah S. Dilbeck (hereinafter Leah) was employed as a real estate salesperson by the Queen Creek Land and Cattle Company from January 1 to April 16; by the Prescott Country Club from May 14 *101 to August 12; and by Southwest Properties, Inc., from September 10 to October 22, a total of 171 days. Leah was required to utilize her own automobile in her employment. She estimated that, during 1973, she traveled approximately 20,000 miles in connection with her business activities. On their joint Federal income tax return for 1973, petitioners deducted $2,257.92 for automobile expenses incurred by Leah in her real estate business. Respondent disallowed a portion of the deduction claimed by Leah for business expenses incurred in the operation of her automobile, determining that the deductible amount did not exceed $1,386. OPINION 1. Meals and Lodging Issue
As a general rule, the costs of meals and lodging are "personal, living, or family expenses" and are nondeductible. Sec. 262; sec. 1.262-1(b)(3) and (5), Income Tax Regs. However, when a taxpayer is "away from home" in pursuit of a trade or business, section 162(a)(2) provides, as an exception to the general rule of nondeductibility, that his travel expenses, including those incurred for meals and lodging, may be deducted. The "home" of a taxpayer for purposes of section 162(a)(2) is not in all cases the place *102 of his domicile or permanent residence. Ordinarily, under that section, a taxpayer's "home" is his abode in the vicinity of his principal place of employment. Lloyd G. Jones,54 T.C. 734, 740 (1970), affd. 444 F.2d 508 (5th Cir. 1971); Ronald D. Kroll,49 T.C. 557, 561 (1968); Floyd Garlock,34 T.C. 611, 614 (1960). When a taxpayer is temporarily away from his principal place of employment (his "home") in pursuit of a trade or business, the costs of his meals and lodging are deductible. Peurifoy v. Commissioner,358 U.S. 59, 60 (1958); E. G. Leach,12 T.C. 20 (1949). Should he accept employment of indefinite duration, however, his abode in the vicinity of his new principal place of employment becomes his tax home, and his meals and lodging expenses are not deductible. Beatrice H. Albert,13 T.C. 129, 131 (1949); Peurifoy v. Commissioner,supra;Ronald D. Kroll,supra.
The critical issue is whether Boyd's employment at the Page jobsite was temporary or indefinite in nature. The answer depends on whether he could reasonably *103 anticipate that his employment at Page would end within a short time or whether he could expect to be employed at that jobsite for an indefinite period. Edward F. Blatnick,56 T.C. 1344, 1349 (1971); Beatrice H. Albert,supra at 131. An analysis of the objective facts leads us to conclude that Boyd's employment in Page was of an indefinite nature. The construction project in Page, which began in December 1972, and continued until sometime in 1976, was a major undertaking. Indeed, Bechtel Power Corporation constructed and operated a facility to provide meals and lodging for hundreds of workers. Except for a 6-week period during a work strike, Boyd was employed from April 2, 1973, until the summer of 1975. He ceased to work in Page, not because of completion of the project but due to his own personal health problems. There is nothing in the record to suggest those problems were anticipated in 1973. Boyd's testimony is clear that he was unsure in 1973 of the length of time he would continue to work on the Page project. His continued employment at the project, in his opinion, was contingent only on the quality of his work performance. *104 During his stay in Page; Boyd's name was not listed at his union hall for employment in Phoenix, and he did not actively seek employment anywhere else while employed in Page. We conclude that Boyd's "home" was in Page during 1973 and, accordingly, his expenses for meals and lodging are not deductible under section 162(a)(2). 2. Automobile Expense Issue
Respondent's disallowance of a portion of Leah's automobile expenses was based on his determination that the amount claimed had not been sufficiently substantiated. We agree with respondent. The only evidence Leah presented concerning the claimed expenses consisted of her approximation that she had driven 20,000 miles during the taxable year in carrying on her real estate business. In support of this approximation, Leah introduced repair invoices for her automobile reflecting odometer readings between April 12, 1973, and August 30, 1973, indicating that her automobile had been driven 14,753 miles during that period. The invoices do not aid petitioners' cause, however, because Leah was engaged in the real estate business only during the period May 14, 1973, to August 12, 1973, and neither her testimony nor the documents *105 introduced in evidence show the amount of the mileage driven for personal reasons or the amount driven for business purposes. Leah testified that, while she worked, she drove her automobile from her home to the real estate office each day. Therefore, at least a portion of the 14,753 miles reflected by the repair invoices was nondeductible commuting expenses. Eugene G. Feistman,63 T.C. 129 (1974). She also admitted that some of her driving was "for pleasure" and for "going to the store." Respondent allowed a deduction of $1,386 for Leah's automobile expenses. On the record before us, we cannot hold that Leah has shown that her automobile expenses exceeded the allowed amount. Accordingly, we sustain respondent's determination on this issue. To reflect the foregoing, Decision will be entered under Rule 155. Footnotes
1. /↩ All section references are to the Internal Revenue Code of 1954, as in effect during the tax year in issue, unless otherwise noted.